# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Petitioner,**

v.                                                     Case No. 14-MC-77

**AURORA HEALTH CARE, INC.,**
        **Respondent.**

## DECISION AND ORDER

The United States is conducting an investigation into whether Aurora Health Care, Inc. ("Aurora") knowingly submitted false claims for reimbursement to federal healthcare programs. As part of its investigation, and pursuant to 31 U.S.C. § 3733, the United States served a civil investigative demand (which, for simplicity, I will refer to as a subpoena) on Aurora, which required Aurora to produce certain documents that the United States deemed relevant to its investigation. Although Aurora produced many documents in response to the subpoena, it is withholding a large quantity of documents on the ground that they are protected by a Wisconsin Statute that prohibits disclosure of information relating to "the review or evaluation of the services of health care providers." See Wis. Stat. § 146.38(1m). The United States contends that Aurora cannot rely on a Wisconsin Statute to withhold documents that are relevant to a federal investigation. It has commenced this action to enforce the subpoena and to compel Aurora to produce all documents it is withholding on the basis of § 146.38. See 31 U.S.C. § 3733(j)(1).

The statute at issue is generally regarded as a "peer review" statute or a statute conferring what is commonly known as the "peer review privilege." See Susan O.

Scheutzow & Sylvia Lynn Gillis, Confidentiality and Privilege of Peer Review Information: More Imagined Than Real, 7 J.L. & Health 169, 216 (1992–93) (identifying Wis. Stat. §§ 146.37–38 as a peer-review statute).  In general, peer review is the process by which physicians review and evaluate health-care services, including medical services, performed by their colleagues.  See Decl. of Jeffrey Smith, M.D., ¶ 2, ECF No. 9.  As one article explains, peer review

> conjures up general images of physicians and hospital staff members meeting to review and discuss the quality of care rendered on an on-going basis in a hospital or other health care setting.  More specifically, it includes the review of individual physicians and other health care professionals appointed to the medical staff of a hospital or other health care organization when there are quality of care concerns with respect to the health care services provided by that individual.

Scheutzow & Gillis, supra, at 172.  Peer-review protections, such as the peer-review privilege and confidentiality provisions, have been adopted to encourage physicians and other health-care staff to participate in the peer-review process.  The rationale supporting these protections is that, without them, a physician might be deterred from participating in peer review or might modify or censor her comments in order to avoid negative consequences, such as a colleague's discovering that she criticized his performance or her having to testify against a colleague accused of malpractice.  See Smith Decl. ¶¶ 3–4; Scheutzow & Gillis, supra, at 174, 176.  Deterring participation in peer review would, in turn, lower the quality of care provided to patients.  Smith Decl. ¶ 6. All fifty states and the District of Columbia have adopted some form of privilege or confidentiality for peer-review materials.  See Scheutzow & Gillis, supra, at 198–217.

Federal law offers some protection to those who participate in peer review. The Health Care Quality Improvement Act of 1986 provides qualified immunity from certain

forms of liability to participants in the peer-review process. See 42 U.S.C. § 11111. However, the Act does not protect peer-review materials from discovery in litigation. Charles G. Kels, Odd Man Out? The Medical Peer Review Privilege In Federal Litigation, 60 Fed. Law. 52, 53 (Dec. 2013).[1] Thus far, federal courts have been generally unwilling to recognize a peer-review privilege similar to the privileges that the states have conferred by statute. The three federal circuits that have considered whether to recognize a peer-review privilege as a matter of federal common law, including the Seventh Circuit, have declined to do so. See Adkins v. Christie, 488 F.3d 1324 (11th Cir. 2007); Virmani v. Novant Health Inc., 259 F.3d 284 (4th Cir. 2001); Mem'l Hosp. for McHenry County v. Shadur, 664 F.2d 1058 (7th Cir. 1981). Although a few district courts have recognized a peer-review privilege in cases involving federal claims that were analogous to state medical-malpractice claims,[2] nearly all of the district courts that have been confronted with the question have likewise declined to adopt a federal peer-review privilege. Indeed, in 2002, one court was able to describe the few cases recognizing a federal peer-review privilege as "anomalies in the corpus of federal case law." Nilavar v. Mercy Health System, 210 F.R.D. 597, 609 (S.D. Ohio 2002). Moreover, every district court that has considered whether the peer-review privilege can be asserted in response to a federal subpoena has determined that it cannot. See In re: Admin. Subpoena Blue Cross Blue Shield of Mass., Inc., 400 F. Supp. 2d 386, 392-93 (D. Mass. 2005) (administrative investigative subpoena);

---

[1] The Act has a confidentiality provision, but its protections are limited to information transmitted to meet certain requirements of the Act. See Kels, supra, at 53.

[2] See Veith v. Portage County, No. 5:11CV2542, 2012 WL 4850197 (N.D. Ohio Oct. 11, 2012); Francis v. United States, No. 09 Civ. 4004, 2011 WL 2224509 (S.D.N.Y., May 31, 2011); Weekoty v. United States, 30 F. Supp. 2d 1343 (D.N.M. 1998).

In re Baptist Mem'l Hosp., No. 04-MC-018-DV, 2004 WL 2905391, at *3 (W.D. Tenn. June 22, 2004) (government subpoena following indictment for health care fraud offenses); Accreditation Ass'n for Ambulatory Health Care, Inc. v. United States, No. 03 C 7380, 2004 WL 783106, at *2-3 (N.D. Ill. Jan. 8, 2004) (administrative subpoena); United States v. United Network for Organ Sharing, No. 02 C 2295, 2002 WL 1726536, at *2 (N.D. Ill. May 17, 2002) (administrative investigative subpoena).

Despite the above authority, Aurora argues that I should recognize the peer-review privilege in this case. This argument is not foreclosed by the Seventh Circuit's decision in Memorial Hospital, because in that case, the Seventh Circuit considered only whether the privilege applied in an action alleging that the peer-review process itself was used to facilitate federal antitrust violations. See 664 F.2d at 1062–63. The court reasoned that recognizing the privilege would, in effect, make it impossible for the plaintiff to prove his antitrust case, since evidence of the violation would likely be found only in peer-review materials.[3] Id. The court appeared to leave open the question of whether the privilege could apply in an action analogous to medical malpractice. Id. The court stated that recognizing the privilege

> in the context of a malpractice action will generally have little impact upon the plaintiff's ability to prove a meritorious claim. For the crucial issue in that type of case is not what occurred at the review proceeding, but whether the defendant was in fact negligent in his care and treatment of the plaintiff. As [one court has noted], "what someone . . . at a subsequent date thought of these acts or omissions is not relevant to the case." More importantly, the

---

[3]The other federal circuit-court cases declining to recognize a peer-review privilege likewise involved claims in which the violation at issue likely occurred during the peer-review process itself. See Adkins, 488 F.3d at 1326 (claim involved discrimination by peer-review committee); Virmani, 259 F.3d at 285–86 (same).

4

>exclusion of that information will not prevent the plaintiff from otherwise establishing a valid claim.

Id. at 1062 (internal citations omitted).

The present case involves an investigation into whether Aurora and some of its physicians knowingly submitted false claims for payment to federal healthcare programs. Unlike the antitrust claim at issue in Memorial Hospital, the government's potential claim against Aurora does not involve an alleged misuse of the peer-review process itself. Thus, preventing the government from accessing the peer-review materials will not necessarily prevent it from determining whether the alleged violations occurred. But unlike the hypothetical medical-malpractice claim discussed in Memorial Hospital, the investigation at issue here would be hindered by blocking access to the peer-review materials. In particular, the materials could shed light on whether Aurora knew that some of its physicians were submitting false claims to federal healthcare programs.[4] Thus, recognizing the privilege in this case would come with a high cost: preventing the government from gaining access to evidence that might reveal that federal healthcare programs have been defrauded.

On the other side of the balance, Aurora has not demonstrated that refusing to recognize the privilege in this case would substantially undermine the peer-review process.

---

[4]Aurora contends that the qualified-immunity provisions of the Health Care Quality Improvement Act would prevent the government from using the information it obtains through its subpoena in any subsequent civil action it may choose to file. See 42 U.S.C. § 11111. However, even if that were so, currently the government is only conducting an investigation into whether false claims were submitted. Information does not have to be admissible at trial to be useful to such an investigation. In any event, at this point, it is by no means clear that immunity under § 11111 would apply to any action the government may decide to pursue.

Aurora has not explained in concrete terms how providing peer-review materials to the federal government as part of an investigation would deter physicians and others from participating in the peer-review process. To be sure, Aurora contends generally that any release of peer-review files would "result in a very significant chilling effect on the peer review process." Smith Decl. ¶ 5. But the Seventh Circuit has allowed the release of peer-review files for use in certain kinds of cases since at least 1981, when Memorial Hospital was decided. Aurora has not shown that this has resulted in a deterioration of peer review over the last thirty-four years. Some commentators have even questioned whether the complete absence of the privilege would undermine peer review. As one commentator writes:

> There is scant support for the contention that peer review would be undertaken in an "atmosphere of apprehension" in the absence of the privilege. Furthermore, the "assertion that access to these [peer review] records will effectively terminate the process of [review] shows little faith or confidence in organized medicine." On the contrary, health care professionals, especially hospital administrators, are constantly seeking to improve the overall level of patient care, and physicians recognize the importance of engaging in intensive peer review. A major benefit of improving health care by rigorous peer review is a reduction of legal liability for medical malpractice and hospital corporate liability.

B. Abbott Goldberg, The Peer Review Privilge: A Law in Search of a Valid Policy, 10 Am. J.L. & Med. 151, 154–55 (1984–85) (footnotes omitted, alteration in original).

More importantly, Aurora has not explained how allowing the federal government to access peer-review files in the course of an investigation would result in a greater chilling effect than already exists by virtue of cases such as Memorial Hospital. If physicians know that their comments or actions during peer review could be used to support an antitrust claim against their hospital or colleagues, what difference will it make if they also know that

6

their comments or actions could be used to prove that their hospital or colleagues have submitted false claims to federal healthcare programs? Also noteworthy is the fact that Wisconsin law allows "the health care provider whose services are being reviewed" access to peer-review materials. Wis. Stat. § 146.38(3)(a). Thus, a participant in peer review already has reason to fear that a colleague will learn about any negative comments the participant makes about him or her during the process. Indeed, some commentators have described the idea that peer-review information is well-protected from disclosure as "more imagined than real." Scheutzow & Gillis, supra, at 171 ("the reality is that peer review proceedings are afforded very little privilege and confidentiality protection pursuant to federal law and very inconsistent protection by state law"). Because participants in peer review already expect that peer-review materials may be disclosed in certain circumstances, there appears to be nothing to be gained by recognizing the privilege in the limited circumstances presented by this case. See Upjohn Corp. v. United States, 449 U.S. 383, 393 (1981) ("An uncertain privilege . . . is little better than no privilege at all."). The only result of doing so would be to obstruct a federal investigation. On balance, then, "reason and experience" do not favor recognizing the privilege in this case. See Fed. R. Evid. 501.

Aurora contends that if I compel it to produce the materials protected by the Wisconsin peer-review privilege, it could face liability under Wis. Stat. § 146.38(4), which subjects those who disclose information protected by the statute to civil liability to any person harmed by the disclosure. But the Supremacy Clause of the United States Constitution would render any suit under § 146.38(4) frivolous. Aurora simply cannot be liable under state law for obeying an order of a federal court. See Memorial Hospital, 664

F.2d at 1063–64 (noting that hospital's compliance with district court's order to produce peer-review materials protected by state law could not subject hospital to criminal liability under state law).

Finally, Aurora argues that a different privilege, known as the self-critical review privilege, also protects the peer-review materials at issue in this case. See Bredice v. Doctors Hosp., Inc., 50 F.R.D. 249 (D.D.C. 1970). That privilege is based on nearly the same policy considerations as the peer-review privilege, and it has not been widely recognized by the federal courts. See Burden-Meeks v. Welch, 319 F.3d 897, 899 (7th Cir. 2003) (noting that privilege has not been recognized in Seventh Circuit). For the same reasons I will not allow Aurora to withhold documents on the basis of Wis. Stat. § 146.38, I will not allow Aurora to withhold documents on the basis of the self-critical review privilege.

Accordingly, **IT IS ORDERED** that the petition to enforce Civil Investigative Demand No. 2014-2 is **GRANTED**.

Dated at Milwaukee, Wisconsin, this 20th day of March, 2015.

                                              s/ Lynn Adelman
                                              _____
                                              LYNN ADELMAN
                                              District Judge